IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARILYN KING,<br>    Plaintiff | No. 3:08cv1603 |
| v. | (Judge Munley) |
| WYOMING VALLEY HEALTHCARE SYSTEM, INC. and WILKES-BARRE GENERAL HOSPITAL, a/k/a WVHCS-Hospital d/b/a WILKES-BARRE GENERAL HOSPITAL,<br>    Defendants | |

## **MEMORANDUM**

Before the court for disposition is the motion for summary judgment filed by Defendants Wyoming Valley Health Care System, Inc. and Wilkes-Barre General Hospital, a/k/a WVHCS-Hospital d/b/a Wilkes-Barre General Hospital (hereinafter collectively "defendants"). The motion has been fully briefed and is ripe for disposition.

**Background**

Defendant Wilkes-Barre General Hospital, a/k/a WVHCS-Hospital d/b/a Wilkes-Barre General Hospital is a healthcare provider that operates a hospital facility at 575 N. River Street, Wilkes-Barre, Pennsylvania. (Doc. 43-2, Defendants' Statement of Undisputed Material Facts, ("SoF"), at ¶ 1).[1] Defendant Wyoming Valley Health Care System, Inc., is a Pennsylvania corporation and the corporate parent of the General Hospital. (Id. at ¶ 2). Plaintiff applied for a security guard position with Defendant

---

[1]For purposes of the general background facts, we will cite to the defendants' statement of undisputed material facts. We will point out any relevant dispute that plaintiff has to these facts.

Wyoming Valley Health Care System. (Doc. 55, Plaintiff's Counter-statement of undisputed facts, ("CoF")).[2]

The Wyoming Valley Health Care System security guard job description requires that a guard be "physically able and proficient in self-defense." (Def. SoF at ¶ 18, Pl. CoF at ¶ 18). It also requires "lifting occasionally in very physical demand level (125 lbs.) generally in optimal position." (Id. ¶ 19). Defendants contend that they impose a 125-pound lifting test for all applicants for security guard positions.[3] (Def. SoF at ¶ 20).

Defendants interviewed plaintiff for the position first on December 15, 2006 and for a second time on December 22, 2006. (Id. ¶¶ 39, 42). Defendants then had plaintiff come in for a post-offer, pre-employment physical on January 2, 2007. (Id. ¶ 47). Part of the physical was a test to determine if plaintiff could lift 125 pounds, and she could not. (Id. ¶ 59). Plaintiff was not offered the position for which she applied. (Id. ¶ 66). Subsequent to the failure to hire her, plaintiff instituted the instant lawsuit alleging employment discrimination.

Plaintiff's seven-count complaint asserts the following causes of action: sex-based discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"); retaliation under Title VII; disability discrimination under the Americans with Disabilities Act ("ADA"); retaliation under the ADA; violation of the Pennsylvania Human Relations Act ("PHRA"); retaliation under the PHRA; and tortious infliction of emotional distress. (Doc. 8, Am.

---

[2]Plaintiff asserts that she applied to the Wyoming Valley Health Care System and defendants assert that plaintiff applied to the Hospital.

[3]Plaintiff disputes this assertion.

2

Compl.).

At the close of discovery, the defendants move for summary judgment, bringing the case to its present posture.

**Jurisdiction**

As plaintiff brings suit pursuant to Title VII and the ADA, for unlawful employment discrimination, we have jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). We have supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

**Standard of review**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not

3

return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

**Discussion**

Defendants move for summary judgment on all of the plaintiff's causes of action. We will address each in turn.

**I. Disability Discrimination**

First the defendants argue that they are entitled to summary judgment on plaintiff's claims for disability discrimination under the ADA and PHRA in Counts III and V because no question of material fact exists as to whether plaintiff is disabled within the meaning of either statute.

Under the ADA an employer may not discriminate against a "qualified individual with a disability" based upon that individual's physical or mental impairments. 42 U.S.C. § 12112. In an ADA case, the initial burden of persuasion rests with the plaintiff to establish a prima facie case. If the plaintiff meets that burden, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973). The

burden then shifts back to the plaintiff to establish that this proffered reason is a pretext for discrimination. Id.

"To make out a prima facie case under the ADA, a plaintiff must establish that s/he (1) has a 'disability,' (2) is a 'qualified individual,' and (3) has suffered an 'adverse employment decision' as a result of that disability." Skerski v. Time Warner Cable Co., 257 F.3d 273, 278 (3d Cir. 2001) (citing Deane v. Pocono Med. Ctr., 142 F.3d 138, 142 (3d Cir. 1998) (en banc)).

Under the first element, a person is considered disabled if he has "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) [is] regarded as having such an impairment[.]" 42 U.S.C. § 12102(1). Here, Counts III and V of the complaint assert that defendants regarded plaintiff as disabled under section (C).

In the instant case, plaintiff's amended complaint alleges that the defendants perceived her to be disabled due to her prior back injury. (Doc. 8, Am. Compl. ¶ 52). Defendants argue that plaintiff cannot establish a prima facie case because she has no evidence that they perceived or regarded her as disabled.

"[A] person is 'regarded as' disabled within the meaning of the ADA if a covered entity mistakenly believes that the person's actual, nonlimiting impairment substantially limits one or more major life activities." Murphy v. United Parcel Serv., Inc., 527 U.S. 516, 521-22 (1999). To make out such a claim, King must show "either: (i) that despite having no impairment at all, [defendants] erroneously believed that she had an impairment that substantially limited one or more of her major life activities; or (ii) that she

had a non-limiting impairment that [defendants] mistakenly believed substantially limited one or more of her major life activities." Eshelman v. Agere Systems, Inc., 554 F.3d 426, 434 (3d Cir. 2009) (citing Tics v. Ctr. Area Transp. Auth., 247 F.3d 506, 514 (3d Cir. 2001); Sutton v. United Air Lines, Inc., 527 U.S. 471, 489 (1999)).

Plaintiff admitted to the defendants during the interview process that she had a limitation in the form of a back injury. In order to establish a *prima facie* case, plaintiff must establish that the defendants mistakenly believed that her impairment limited one or more of her major life activities. Plaintiff does not set forth in her brief what major life activity the defendants mistakenly believed was limited by her impairment. Plaintiff's failure to provide a proper analysis under the relevant requirements leads the court to conclude that she has not established a *prima facie* case. Accordingly, summary judgment will be granted to the defendants on the plaintiff's claims of disability discrimination under the ADA and the PHRA.[4]

## II. Gender Discrimination

Counts I and V of plaintiff's complaint assert causes of action for gender discrimination[5] Title VII of the Civil Rights Act of 1964 provides that

---

[4]Plaintiff argues simply that "Defendants do not test all security guard applicants. ... However, sufficient evidence exists to suggest that defendants perceived [plaintiff] to be disabled, and scheduled her for the strength test to exclude her from employment." (Doc. 56, Pl.'s Brief at 15).

[5]Count I is brought pursuant to federal law, that is, Title VII of the Civil Rights Act of 1964. Count V is brought under the Pennsylvania Human Relations Act, 43 PENN. CON. STAT. § 951, et seq. Pennsylvania courts generally interpret the PHRA in accord with its federal counterparts. Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996). Consequently, it is proper to treat plaintiff's PHRA claims as coextensive with her Title VII

"[it shall be unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

In the instant case, plaintiff claims that the "Defendants' lifting requirement is designed and intended to exclude women from the position of security guard." (Doc. 8, Am. Compl. ¶ 41). Defendants allege that plaintiff has presented no competent summary judgment evidence to support her claim.

In a gender discrimination case, the plaintiff may proceed on either a disparate treatment claim or a disparate impact claim. Healy v. Softwood Psychiatric Hosp., 78 F.3d 128, 131 (3d Cir. 1996). We will discuss each theory separately.

### A. Disparate treatment

Courts have established a burden-shifting scheme for claims of disparate treatment sex discrimination under Title VII when no direct evidence of such discrimination exists: "the plaintiff must establish a prima facie case of discrimination. If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the plaintiff's rejection." Jones v. School Dist. of Philadelphia, 198 F.3d 403, 408 (3d Cir. 1999) (quoting McDonnell Douglas, 411 U.S. at 802). If the defendant meets that burden,

---

claims, and our Title VII analysis applies, where appropriate, with equal force to her PHRA claims.

the burden shifts back to the plaintiff, who must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for the discrimination." Id.

A plaintiff seeking to establish a prima facie case under Title VII "must show (1) that she is a member of a protected class, (2) she was qualified for the position, (3) she was discharged - or in this case not hired, and (4) the position was ultimately filled by a person not of the protected class." Sheridan v. E.I. Dupont de Numbers and Co., 100 F.3d 1061, 1066 (3d Cir. 1996).

The defendants argue that plaintiff cannot establish a *prima facie* case because she was not qualified for the job she sought, as evidenced by her failure to pass the lifting test. In support of their position, defendant submitted their security guard job description. (Doc. 43-14, Def. Ex. H). The job description provides that the physical requirements of the security guard job include: "Frequent standing, walking or operating in work controlled position; lifting occasionally in very heavy physical demand level (125 lbs.), generally in optimal position." (Id. at 4). According to Jim Richards, the defendant's Director of Security, great physical strength is needed for the security officers because they are unarmed and have to physically restrain patients, trespassers, visitors and mental health patients. (Doc. 43-13, Off. of Jim Richards, ¶¶ 4-5). To further justify the lifting requirement, Richards documents several incidents from 2006 where security officers had to physically restrain or remove persons. (Id. ¶ 6).

Plaintiff alleges that the 125-pound lifting requirement was not a bona fide qualification for the job. She asserts that the defendants did not require this level of strength from all their security guards and that many of

the males who were hired were never required to pass the lifting test.  After a careful review, we agree with the plaintiff.

The defendants were unable to locate any documentation to establish that several of its security officers, including Joseph Apsides, Christopher Pealike, James Richards, Anthony Reminisce, Peter Negus, and David Whipple were ever physically tested.  (Doc. 55-6, Pl. Ex. F, Debts' Supplemental Response to Pl's Second Request for Production of Documents).  In fact, David Whipple admitted to plaintiff that he was not required to pass the defendants' physical before becoming a security guard.  (Doc. 55-7, Pl. Ex. G, Pl. Dep. at 74).   Additionally, defendants contract with Pat Curley Detective Agency for some security officer positions at defendants' psychiatric hospital.  These officers are not required to pass, or even take, a lifting test.  (Doc. 55-13, Curley Dep. at 33).  Curley estimated that they should be able to lift approximately forty pounds as opposed to one hundred twenty-five pounds.  (Id. at 32). Defendants argue that the evidence from Curley is not dispositive of whether defendants' lifting requirement is reasonable and consistent with business necessity in their facility.  We find, however, that this testimony, and the other evidence cited by the plaintiff, creates a genuine issue of material fact.  A  jury could rely on this evidence to conclude that the 125-pound lifting requirement is not an actual qualification for the job.

In further support of their position that they did not discriminate based upon gender, the defendants point out that its employees are overwhelmingly female.  (Doc. 43-9, Def. Ex. C, Spreadsheet) (indicating that defendants' workforce is 76% female and 24% male).  Plaintiff points out, however, that between at least 1981 and the time that plaintiff and the

9

summer of 2007, defendants hired no women in the relevant employment position, that is security officer. (Doc. 55-3, Pl. Ex. B, Richards Dep. at 120; Doc. 55-4, Pl. Ex. C, Crispell New Employee Orientation record). A jury may infer from this evidence that defendants were in fact discriminatory in their hiring. For the above reasons, we will deny summary judgment on the plaintiff's disparate treatment gender discrimination claim.[6]

### B. Disparate Impact

The second theory under which a plaintiff may recover for gender discrimination in employment is disparate impact. The disparate impact theory can lead to liability where "a facially neutral policy affects members of a protected class in a significantly discriminatory manner." Healy, 78 F.3d at 131.

The Supreme Court has explained that to establish a *prima facie* case of disparate impact gender discrimination,

> a plaintiff need only show that the facially neutral standards in question select applicants for hire in a significantly discriminatory pattern. Once it is thus shown that the employment standards are discriminatory in effect, the employer must meet the burden of showing that any given requirement has a manifest relationship to the employment in question. If the employer proves that the challenged requirements are job related, the plaintiff may then show that other selection devices without a similar discriminatory effect would also serve the employer's legitimate interest in efficient and trustworthy workmanship.

Dothard v. Rawlinson, 433 U.S. 321, 329 (1977) (internal quotation marks

---

[6] We will not further discuss the burden shifting analysis as the defendants' proposed legitimate reason for not hiring the plaintiff, failure to meet the job qualifications, is the same issue the jury must decide for the *prima facie* case. If the jury finds a *prima facie* case, then they would not be able to accept the defendant's proposed legitimate reason for the employment decision.

and citations omitted).

In the instant case, the plaintiff has not met the burden to establish that the lifting requirement is discriminatory in effect. She has presented no evidence that the test itself causes the defendants to hire security officers in a significantly discriminatory pattern. Accordingly, judgment will be granted to the defendants to the extent that the plaintiff asserts a disparate impact claim.[7]

**III. Retaliation**

Counts II, IV and VI of plaintiff's complaint assert causes of action for retaliation. Defendants argue that these counts should be dismissed because plaintiff failed to exhaust her administrative remedies. We agree.

The law provides that prior to bringing an employment discrimination suit under Title VII, a plaintiff must exhaust her administrative remedies. Robinson v. Dalton, 107 F.3d 1018, 1020 (3d Cir. 1997). In the instant case, plaintiff pursued her administrative remedies through the Pennsylvania Human Rights Commission (hereinafter "PHRC"). Plaintiff's PHRC complaint raises only two theories of relief, gender discrimination and disability discrimination. It does not mention retaliation. (Doc. 43-28, Def. Ex. V, Pl's PHRC compl.). Thus, the defendants argue that plaintiff's retaliation claims should be dismissed for failure to exhaust administrative remedies. Plaintiff argues that the federal rules' "liberal pleading

---

[7]Defendants assert that plaintiff's complaint does not allege a disparate impact claim, and that plaintiff first raised the issue at the summary judgment stage of the proceedings. Defendants thus argue that we should not address the issue at all. We need not address this issue, however, as we find that even if plaintiff's properly raised a disparate impact claim, judgment should be granted to the defendants on that issue.

11

requirement" allow her to bring a retaliation claim although it was not expressly pursued before the PHRC. The court is unconvinced. Nothing in the plaintiff's PHRC complaint can be read to assert a retaliation claim even when liberally construed. Thus, judgment will be granted to the defendants on plaintiff's retaliation claims.

Moreover, even if the plaintiff had exhausted her administrative remedies with regard to retaliation, she has not presented any evidence from which a reasonable jury could conclude that she was retaliated against. She asserts that she believed that the lifting requirement was unlawfully discriminatory and that she told the defendants of this the day of her physical testing. She avers that they then failed to exempt her from the testing. No evidence, however, indicates that the defendants planned to exempt her from the testing and only tested her because she complained of its discriminatory nature. In fact the evidence indicates that defendants planned all along to have plaintiff perform the lifting test. There is no indication that planned to exempt plaintiff and then suddenly changed their mind when plaintiff complained. In other words, no evidence indicates retaliation in any way. Defendants acted as the evidence establishes that they intended to act, regardless of whether the plaintiff complained of the testing. Thus, even if plaintiff had exhausted her administrative remedies with regard to retaliation, the claim would properly be dismissed.

**IV. Tortious Infliction of Emotional Distress**

Count VII of plaintiff's complaint asserts a cause of action for tortious infliction of emotional distress. Specifically, plaintiff claims that the defendants "inflicted extreme emotional distress upon [her] negatively impacting her ability to enjoy life and engage in meaningful relationships

with those close to her." (Doc. 1, Compl. ¶ 66). Defendants seek summary judgment on this claim and argue that plaintiff cannot demonstrate extreme and outrageous conduct by the defendants.

"Under Pennsylvania law, courts have found intentional infliction of emotional distress only where the conduct at issue has been 'atrocious' and 'utterly intolerable in a civilized community.'" Clark v. Township of Falls, 890 F.2d 611, 623 (3d Cir. 1989). The Third Circuit Court of Appeals has indicated that "extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." Id. Moreover, plaintiff must prove her severe emotional distress through competent medical evidence. Katatsky v. Kin David Memorial Park, Inc., 527 A.2d 988, 995 (Pa, 1987).

Defendants argue that plaintiff can establish neither sufficiently outrageous conduct nor emotional distress. Plaintiff has not briefed this issue. As plaintiff has pointed to no evidence in the record to support this claim, we will grant judgment to the defendants.

**V. Punitive damages**

Plaintiff seeks punitive damages on each of Counts One, Two, Three, Four and Seven. Defendants argue that the claim for punitive damages should be stricken because plaintiff cannot demonstrate that defendants acted with the requisite malice or reckless indifference to plaintiff's rights.

The law provides that plaintiff may be entitled to recover punitive damages for discrimination if she can establish that the defendants intentionally discriminated with malice or reckless indifference to her

13

federally protected rights. Kolstad v. American Dental Ass'n, 527 U.S. 526, 534 (1999). "[A]n employer must at least discriminate in the face of a perceived risk that its actions will violate federal law to be liable in punitive damages." Id. at 536.

We do not agree with the defendants that the punitive damages claim should be dismissed at this time. We find that it is more appropriate to decide this issue after hearing the evidence presented at trial. Accordingly, the motion for summary judgment will be denied with respect to the punitive damages.

**VI. Plaintiff's motion in limine**

In addition to the defendants' motion for summary judgment, pending before the court is a motion in limine filed by the plaintiff. We will deny this motion without prejudice to the plaintiff raising it again prior to the pretrial conference in conformance with the court's motion in limine rule.

**Conclusion**

For the reasons set forth above, the defendants' motion for summary judgment will be granted in part and denied in part. The motion will be granted with regard to plaintiff's disability discrimination claim, retaliation claim and tortious infliction of emotional distress claim. It will be denied with respect to plaintiff's gender discrimination claim and punitive damages. Additionally, plaintiff's motion in limine will be denied without prejudice. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARILYN KING,<br>Plaintiff<br><br>v.<br><br>WYOMING VALLEY HEALTHCARE SYSTEM, INC. and WILKES-BARRE GENERAL HOSPITAL, a/k/a WVHCS-Hospital d/b/a WILKES-BARRE GENERAL HOSPITAL,<br>Defendants | No. 3:08cv1603<br><br>(Judge Munley) |

## ORDER

**AND NOW**, to wit, this 30th day of September 2010, the defendants' motion for summary judgment (Doc. 43) is **GRANTED** in part and **DENIED** in part. The motion is granted with regard to plaintiff's disability discrimination claims, retaliation claims and tortious infliction of emotional distress claim. It is denied with respect to plaintiff's gender discrimination claim and punitive damages.

Plaintiff's motion in limine (Doc. 35) is **DENIED** without prejudice to the plaintiff filing it at the appropriate time prior to the pre-trial conference.

**BY THE COURT:**

**s/ James M. Munley
JUDGE JAMES M. MUNLEY
United States District Court**